IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DISTRICT

2006 FEB -3 A

UNITED STATES OF AMERICA,                :

     Respondent,                          :

vs.                                      :          CASE NO. 05cv1193-T
                                                    (Cr. No. 93-310-N)
JUANITA HART,                            :

     Defendant/Movant.                    :

### DEFENDANT'S ANSWER TO
### UNITED STATES' RESPONSE TO § 2255 MOTION

COMES NOW, Defendant Juanita Hart, acting as Pro se in the above-styled case. Defendant asks this Honorable Court to construe this Motion liberally, since defendant is not represented by Counsel. See Haines vs. Kerner, 404 U.S. 519, 30 L Ed 2d 652, 92 S Ct. 594.

Defendant respectfully requests this Honorable Court to vacate or correct the sentence, or to grant a hearing upon the issues defendant believes to be imposed in violation of the Sixth and Fifth Amendments of the Constitution.

Defendant is aware of the Government's position that her Booker claims are not cognizable on Collateral Review. Nevertheless, defendant argues that Booker should be applied retroactively in her case for several reason(s).

### I. RETROACTIVITY THROUGH MULTIPLE HOLDINGS

First, even though the Supreme Court did not expressly address retro-activity, multiple holding from a series of cases may dictate retroactivity. According to Tyler vs. Cain, 533 U.S. 656, the Supreme Court can make new rules retroactive (1) by declaration, (2) by application of the rule to Habeaus cases, or (3) through multiple holdings, which necessarily dictate retroactivity of the new rule. In the Tyler vs. Cain, the Supreme Court

held that a new rule of criminal procedure may be made retroactive through a series of that Court cases:

> "Justice Breyer observes that this court can make a rule retroactive over the course of two cases. We do not disagree that with the right combination of holdings the Court could do this . . . Multiple cases can render a new rule retroactive only if the holdings in those cases necessarily dictate retroactivity of the new rule", <u>Tyler</u>, 533 U.S. at 666.

In her concurrence, Justice O'Connor explained the Court ma[k]es a new rule retroactive through multiple holdings that <u>logically</u> dictate the retroactivity of the new rule. <u>Tyler</u>, 533 U.S. at 668-69. (O'Connor, J. concurring).

In the plurality decision in <u>Teague vs. Lane</u>, 489 U.S. 288 (1989), the Supreme Court announced that new procedural rules of Constitutional Law would generally not be applied retroactively to cases on Collateral Review. <u>Teague</u> adopts exceptions to the general principle that new rules of Constitutional Procedure do not apply retroactively. The second exception of <u>Teague</u> mandates that new recognized Constitutional rules of Criminal Procedure be applied retroactively where the rule both:  (1) implicates the Fundamental Fairness of the Proceeding and (2) Heighten the Accuracy or Reliability of the Outcome. The second exception requires that a new rule be applied retroactively for "those procedures that are implicit in the concept of ordered liberty". <u>Teague</u>, 489 U.S. at 311. As the Court explained, such rules vindicate two discreet concerns:  the fundamental fairness of the underlying proceeding; and the accuracy of that underlying criminal proceeding, <u>Saffle vs. Parks</u>, 494 U.S. 484, 495 (1990). In <u>Schiro vs. Summerlin</u>, No. 03526, 2004 WL 1402732 at * 57 (U.S. June 24, 2004), a five-justice

2

majority concluded that the decision in Ring vs. Arizona, 536 U.S. 610 (2002), applying Apprendi to Arizona's capital sentencing scheme does not apply retroactively under Teague. Although, in Schrior, the Supreme Court unanimously agreed that the Ring rule --and therefore Apprendi-- involves fundamental fairness satisfying the first prong of Teague's second exception. See Schrior, 2004 WL 1402732 at * 3 (Scalia, J.) id at * 7-8 (Breyer, J., dissenting). Thus, is is further arguable that Blakely and Booker would also meet that part of the Teague test. However, in Schrior, Ring did not fail the accuracy requirement, the second prong of the second exception. The Court found that under the Arizona sentencing scheme, the judge made findings regarding sentencing enhancements, by beyond a reasonable doubt standard. The Court found that while Schrior, met the first part of the Teague Test, he could not meet the second as there was not a fundamental difference in accuracy between judicial findings beyond a reasonable doubt and jury findings beyond a reasonable doubt. In the end, the Court reiterated that the "right to a jury trial is fundamental to our system of criminal procedure," but held that the Ring Rule should not apply retroactively because it does not seriously enhance accuracy. Id. at 6-7. The four dissenting justices disagreed, noting various reasons why jury findings are superior. Schrior, 2004 WL 1402732, at * 9-12 (Breyer, J., dissenting). The dissent began its analysis by noting that all of the Justices agreed that "Ring meets the first Teague criterion," by implicating fundamental fairness.

Therefore, we know that the rule announced by Apprendi, Blakely and Booker, likewise, implicates fundamental fairness. We also know that the Justices agree that jury finding beyond a reasonable doubt are much more accurate than judicial findings by a prepondence of the evidence. Unlike Ring, Booker could meet the second prong of the Teague Test. Thus, based on

3

the combination of rulings in <u>Teague</u>, <u>Schriro</u> and also <u>Winship</u>, multiple holdings should dictate retroactivity of <u>Booker</u>. The Supreme Court has repeatedly recognized the enhanced accuracy mandated by the rules in <u>Winship</u> and <u>Mullaney</u>. In <u>Ivan vs. City of New York</u>, 407 U.S. 203, 205 (1972), the Court gave the rule announced in <u>Winship</u> retroactive effect, because "the major purpose of the constitutional standard of proof beyond a reasonable announced in <u>Winship</u> was to overcome an aspect of a criminal trial that substantially impairs the truth-finding function. Id at 242.

## II. <u>BOOKER'S</u> RETROACTIVITY TO <u>APPRENDI</u>

Secondly, movant argues that even if the Court can not agree that <u>Apprendi/Blakely/Booker/FanFan</u> should be found retroactive through multiple holdings, the Court should find that these cases should be found retroactive, atleast to a certain extent.

Movant, will begin, her second argument with Justice O'Connor's dissent, in <u>Blakely</u>. Justice O'Connor was adamant in her <u>Blakely</u> dissent, that the decision would apply to everyone sentenced at least since <u>Apprendi</u>. See, Blakely, 542 U.S. ___.

It is undisputable that <u>Apprendi</u> was determined to be a new rule of law. "<u>Ring</u>, <u>Blakely</u>, <u>Booker</u> and <u>FanFan</u> are extensions of that rule." See <u>Anderson</u>, 396 F.3d, 1340. Movant further argues that they are not only extensions of the <u>Apprendi</u> rule, but arguably they are in fact, the same rule applied to different situations.

<u>Ring</u> is <u>Apprendi</u> applied to facts increasing a defendant's sentence from life imprisonment to death. See <u>Anderson</u>, 396 F.3d, 1339. <u>Blakely</u>, 124 S. Ct. at 2531, 2537 is <u>Apprendi</u> applied to Washington State Guideline Scheme, clarifying that the 'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose solely on the basis of the facts

4

reflected in the jury verdict or admitted by the defendant. See, Anderson, 396 F.3d, 1338. Booker is Apprendi/Blakely applied to the Sentencing Guidelines. Notice the following quotes from Booker, 543 U.S. ____, 125 S.Ct.

1. "Applying its decision in Apprendi vs. New Jersey and Blakely vs. Washington, to the Federal Sentencing Guidelines, the Court holds . . ." See Booker, 543 at 1-2, 20 (Stevens, J., opinion of the Court).

2. "More important than the lanuage used in our holdings in Apprendi, are the principles, we sought to vindicate. Those principles are unquestionably applicable to the guidelines." Booker, 543 U.S. ____, 125 S. Ct.

3. "Further, the Court's pre-Apprendi cases, considering the Guidelines are inapplicable, as they did not consider the application of Apprendi to the Sentencing Guidelines," Booker, 543 U.S. ____. Also see Anderson, 396 F.3d 1338.

Apprendi holdings were reaffirmed in Ring, Blakely, and Booker. Movant's point is that Apprendi, Ring, Blakely and Booker is the same new rule --the Apprendi rule-- applied to different sets of circumstances. "[W]hen a decision of this Court merely has applied settled precedent to new and different factual situations, no real question has arisen as to whether the later decision should apply retrospectively. In such cases, it has been a foregone conclusion that the rule of the later case applies in earlier cases, because the later decision has not in fact altered that rule in any material way." See U.S. vs. Johnson, 457 U.S. 537, 549, 102 S.Ct. 2579, 2586. See also Truesdale vs. Aiken, 480 U.S. 527, 107 S. Ct. 1394; Dunaway vs. New York, 442 U.S. 200, 99 S. Ct. 2248; Lee Vs. Missouri, 439 U.S. 461, 462, 99 S. Ct. 700, 711.

Here, the movant refers to Apprendi as the earlier case and Booker as the later case. (Some would argue that Winship was the earlier case. But that theory develops argument 1). Thus, movant argues at the very

5

least, <u>Booker</u> is retroactive back to <u>Blakely</u>, back to <u>Ring</u>, back to <u>Apprendi</u>, even though full retroactivity may not ever be established for neither of the <u>Apprendi</u> line of cases. This is what Justice O'Connor feared, that every sentence since <u>Apprendi</u> would be in jeopardy.

Because <u>Apprendi/Ring/Blakely/Booker</u> is the same new rule, applied to different situations, movant is entitled to relief under <u>Booker</u>.

<u>Booker</u> should be retroactive, at the very least to all cases whose convictions were not final prior to the <u>Apprendi</u> Ruling.

<u>Statute of Limitation Arguments</u>

First, pertaining to the One Year Statute of Limitation Deadline, movant's motion would be timely as she filed <u>Apprendi</u> prior to her conviction being finalized; if Court agrees <u>Booker</u> is retroactive back to <u>Apprendi</u>.

Secondly, referring to <u>Anderson</u>, 396 F.3d, 1340, which reads: "It follows that because <u>Booker</u>, like <u>Blakely</u> and <u>Ring</u> is based on extensions of <u>Apprendi</u>"; Hence, it is further, arguable that movant's Limitation Period will run from (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence (i.e., one year from the date the Supreme Court ruled <u>Apprendi</u>, applied to the Guidelines).

<u>Other Arguments</u>

In reference, to the Appellant Court, previous rulings concerning defendant's <u>Apprendi</u> claims, movant believes they were erroneous. Appellant Court stated Hart's sentence increases for obstruction of Justice, for being a major participant, and for possession of a firearm are not unconstitutional under <u>Apprendi</u> because <u>Apprendi</u> is not applicable to sentencing factors. See Appellant Judgment at 3. However, <u>Apprendi</u>, 530 U.S. at 476, 492 states "characterization of a fact or circumstances as an element or sentencing factor is no determination of the question, who decides, judge or jury." Also, see

6

This statement arguably yields Appellant Court Judgment erroneous. Now that Apprendi applies to the Guidelines, Booker, 20 grams of cocaine base is no longer an amount sufficient to warrant the sentence imposed.

Movant's sentence is excessive (360 months). "As the enhancement became greater, the jury findings of the underlying crime became less significant, the Judge's power was increased and the jury's diminished." Booker, 543 U.S. ____. Defendant's sentence is tripled by the preponderance of evidence standard. Defendant's Constitutional Rights were violated under a Mandatory Guideline Regiment. Movant's sentence perhaps does not meet reasonableness standard as enumerated in 18 U.S.C. § 3553(a)(1), (3)-(7), Booker. "Those sections require inter alia that the sentencing reflect: the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; the need to avoid unwarranted disparity among defendants with similar records and similar crimes; and the need to provide restitution to any victim of the offense."

It is arguable that movant would have received a lesser sentence under an advisory system and that defendant's sentence would not have met the reasonableness requirement. Movant is entitled to a hearing upon these isuses. Petitioner is in the same or similar situation as Blakely, Booker and FanFan, thus, she is entitled to the same new rule of Constitutional Law that was applied in those cases. Hart's Criminal History Category was a I, reflecting zero criminal history. Booker's was a V. Hart was a college graduate who had a career as a Public Assistant Specialist for the State of Florida, until mid 1990. Booker was a career offender. How can she not be afforded the same opportunity as he?

Perhaps Hart's case would have been the precedent setting case, if she had filed certiorari, if she had the wisdom, legal expertise or legal advise

as Booker. Please, do not penalize the movant for her lack of knowledge; she was without legal counsel.

In U.S. vs. Reese, 397 F.3d, 1337, "a remand to trial court was necessary where the defendant expressedly challenged his sentence on Apprendi grounds in the trial court and in the 11th Circuit and the Supreme Court granted certiorari and remanded for further consideration in light of Booker." Like Reece, Defendant Hart challenged her sentence in the 11th Circuit. Again, should the defendant be penalized for her lack of knowledge and legal counsel?

CONCLUSION

Defendant Juanita Hart, respectfully and mercifully asks this Honorable Court to either correct or vacate her sentence or at the very least grant her a hearing upon the issues set forth herein. Defendant, merely asks the Court to afford her the same opportunity as Booker.

This _29th_ day of January, 2006.

Respectfully submitted,

_Juanita Hart_

Juanita Hart, Pro se
Federal Register #09233-002
Marianna Federal Prison Camp
Seminole A
P. O. Box 7006
Marianna, Fl 32447-7006

8

CERTIFICATE OF SERVICE

I, Juanita Hart, hereby certify that I have mailed a true and correct copy of the foregoing document in a postage-sufficient envelope in the institutional mailbox at Marianna Federal Prison Camp to the following:

> Mr. Terry F. Moorer
> Assistant U.S. Attorney
> P. O. Box 197
> Montgomery, AL 36101-0197

This 29th day of January, 2006.

Respectfully submitted,

Juanita Hart

Juanita Hart, Pro se
Federal Register #09233-002
Marianna Federal Prison Camp
Seminole A
P. O. Box 7006
Marianna, Fl 32447-7006